## Gershom Turner *versus* Elijah M. Bissell *et al.*

By a written contract between B and R, B agrees *to furnish R for one year with wool,* to be worked into satinets, and R is to deliver to B all the satinets which the wool will make, and is to find and pay for warps for the same. For *working the wool,* finding warps, &c., B is to pay R forty per cent. on the sales of the satinets. Each is to pay half the charges. B is to have the whole direction of the sales, and *should* he make sales himself he is to have one and a half per cent. on forty per cent. of the sales. In an action against B and R for the price of the warps furnished by the plaintiff to R, it was *held,* that B was not a partner of R, and consequently was not liable to the action.

By virtue of *St.* 1834, *c.* 189, a plaintiff in an action, founded on contract, brought against several defendants, might be allowed to discontinue as against one who had been defaulted, and proceed against the others.

Assumpsit against Elijah M. Bissell and Josiah G. Root, to recover the value of goods contracted for by Root and delivered to him. Bissell was joined in the action, on the ground that he was liable with Root as a partner. The goods consisted principally of warps for the manufacture of satinet. The delivery of the goods was proved, and Root was defaulted. They were delivered, with two exceptions, between May 1, 1831, and May 1, 1832.

To prove that Bissell was a partner with Root in the business of manufacturing satinet, the plaintiff gave in evidence a written agreement between the defendants, dated February 21,

1831, to this effect. Bissell agrees to furnish merchantable wool, delivered at his store, to be worked into satinets, for one year commencing on the 1st of May next, to be delivered in suitable quantities to Root, on the condition hereafter named. Root is to take the wool from Bissell's store and deliver to him all the satinets the wool will make, and Root is to find and pay for warps for the same. The wool is to be worked chiefly into a black mixture of a certain quality, and the satinets to be finished and put up in a certain manner, specified in the agreement, and when so finished, are to be delivered to Bissell at his store, with an account of the number of pieces and of the yards in each piece. Root is to complete and deliver from 1000 to 1500 yards each month. Should Bissell think the satinets are not as well made as required by the contract, the subject is to be left to arbitrators, who are to say what damage, if any, Root shall pay and how much better he shall thereafter finish the satinets. For working the wool, finding warps, &c., Root is to receive from Bissell forty per cent. of the sales, to be paid by Bissell to Root, one half, in cash, payable in three months after the delivery of each month's work, one quarter, in carding oil and dye stuffs, at his customary prices, and the remaining quarter, in goods out of Bissell's store, at customary prices. For expenses of boxes, transportation, freight, commissions and charges from here to and in New York and elsewhere, until sold, Root is to be charged with one half by Bissell, and this is to be considered as on the cash and goods payment. Bissell and Root are to pay each half the charges. Bissell is to have the whole direction of sales, agreeably to his best judgment, and should he at any time make sales himself, he is to charge Root one and a half per cent. on forty per cent. of the sales. For such blue mixtures as Root and Bissell shall agree to have made, Bissell is to pay sixty per cent. of the costs of the color more than if it was a black mixture, and Root the remaining forty per cent. If any differences arise out of the contract, they are to be submitted to J. Pomeroy and J. Stearns, (who are to choose an umpire, if necessary,) and their decision is to be final.

SHAW C. J., before whom the cause was tried, being of

Turner
*v.*
Bissell.

opinion that this instrument did not constitute a contract of partnership between the defendants, so as to render Bissell liable for the satinet warps delivered to Root, directed a nonsuit, reserving the question of construction for the consideration of the whole Court.

*Sept.* 18*th*

*C. A. Dewey, Martin* and *Bishop,* for the plaintiff, said that some of the expenses were to be a common charge upon both of the defendants, and that Root was to have a proportion of the profits and bear a proportion of the loss, and that they were partners as to third persons, if not as between themselves. *Waugh* v. *Carver,* 2 H. Bl. 235 ; *Grace* v. *Smith,* 2 W. Bl. 998 ; *Hamper, Ex parte,* 17 Ves. 404 ; *Dob* v. *Halsey,* 16 Johns. R. 34 ; *Hodgkinson, Ex parte,* 19 Ves. 291 ; *Smith* v. *Watson,* 2 Barn. & Cressw. 401 ; *Purviance* v. *M'Clintee,* 6 Serg. & Rawle, 259 ; *Musier* v. *Trumpbour,* 5 Wendell, 274 ; Chitty on Contr. 69.

*Dwight* and *Hubbard,* on the other side, argued that the satinet, when manufactured, was the sole property of Bissell, and that Root was merely an agent, who was to receive a stipulated compensation for his services. 3 Kent's Comm. 11 ; 1 Swift's Dig. 340 ; *Dry* v. *Boswell,* 1 Campb. 329, and note ; *Hamper, Ex parte,* 17 Ves. 404 ; *Stevens* v. *Briggs,* 5 Pick. 177 ; *Rice* v. *Austin,* 17 Mass. R. 197 ; 3 Stark. Evid. (Metcalf's ed.) 1071, 1072, and notes ; *Muzzy* v. *Whitney,* 10 Johns. R. 226.

The opinion of the Court was afterwards drawn up by

WILDE J. The question submitted is whether the defendants are liable in this suit as partners. It is admitted that they were not partners *inter se,* for by the terms of their agreement they had not a mutual interest in the profits and loss of the business to which it related, which is essential to render a partnership complete. But the plaintiff's counsel contend that both of the defendants participated in the profits of the business, and were thereby chargeable with respect to third persons. And it is certainly a well established principle, that whoever participates in the profits of a trade, or has a specific interest in the profits themselves, as profits, is chargeable as a partner with respect to third persons. Gow, 14. But it is equally well established, that where a party is entitled to or re-

ceives a given sum of money, in proportion to a given quantum of the profits, as a compensation for his labor and services, he is not thereby liable to be charged as a partner. Gow, 19. Thus in *Dry* v. *Boswell*, 1 Campb. 329, the proprietor of a lighter agreed with a person to work his lighter, and to allow him therefor one half of the gross earnings as a compensation for his labor ; and it was ruled by Lord *Ellenborough*, that such an agreement did not constitute a partnership. The cases of the seamen employed in the whale fisheries, and of shipments to India on half profits, come within the same distinction. So factors and other agents who receive commissions in proportion to the amount of sales, are interested in the profits, but as they have no interest in them, excepting so far as they may determine the amount of compensation for their services, they do not thereby become partners.

And we are of opinion that the present case falls within this distinction. The object of Bissell was to have his wool worked into cloth, and he agreed to allow Root, as compensation for manufacturing, an amount of money to be regulated by the amount of sales ; and in no other manner was Root interested in the profits. The circumstance that Root was to find warps, does not affect the principle upon which the distinction as to compensation is founded. If Bissell had agreed with Root to pay him a certain sum for his services, and for supplying the warps, there could be no pretence for holding them as partners ; and we can perceive no difference in principle, arising from the circumstance that the compensation was to be determined according to the amount of sales.

*Motion to set aside the nonsuit overruled.*

After this case had been reserved as before mentioned, the *St.* 1834, *c.* 189, was passed, providing " that if in any action founded on debt or contract now pending, &c., against two or more defendants, it shall appear at any time before final judgment therein, that any of the defendants was not a party to such contract, he shall be discharged therefrom, &c., and the plaintiff shall thereupon be entitled to recover against any other defendant or defendants in such action, in the same manner as if such action had originally been brought against

such other defendant or defendants only." And the plaintiff moved to discontinue against Root and proceed against Bissell, inasmuch as the declaration set forth some demands for which, if the defendants were not partners, Bissell alone was liable, and property of Bissell had been attached on the writ. This motion was opposed, because Root, having been defaulted, had thereby confessed that he was a party to the contracts declared on and the statute was intended to authorize the plaintiff to discontinue against one of two defendants who had made a successful defence, as Bissell had done in the present case, and to take judgment against the other ; and further, because it had been agreed that the plaintiff should become nonsuit, if the contract between Bissell and Root did not constitute a partnership. But the *Court* were of opinion, that under the statute a plaintiff might discontinue against a defendant who had been defaulted, and they said that if the statute had been in existence at the time when the case was reserved, the reservation would have been in accordance with it ; they therefore granted the plaintiff's motion, thereby securing to him the benefit of his attachment, but under the circumstances they said he ought to be placed in no better situation as to costs, than if he were required to bring a new action. See Revised Stat. *c.* 100, § 6, 7.